# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-2045

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Nebraska. |
| John J. Fellers, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: October 16, 2001

Filed: April 8, 2002

_____

Before WOLLMAN,[1] Chief Judge, LAY, and RILEY, Circuit Judges.

_____

WOLLMAN, Chief Judge.

John Fellers appeals from the judgment of conviction entered and the sentence imposed by the district court[2] for conspiracy to possess with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 846. We affirm.

_____

[1]The Honorable Roger L. Wollman stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on January 31, 2002. He has been succeeded by the Honorable David R. Hansen.

[2]The Honorable Lyle E. Strom, United States District Judge for the District of Nebraska.

## I.

On February 24, 2000, two policemen went to Fellers's Lincoln, Nebraska, home to arrest him for conspiracy to distribute methamphetamine. After Fellers admitted the police to the house, they told him that they were there pursuant to an indictment and that they wanted to discuss his involvement in the use and distribution of methamphetamine and his associations with certain persons. Fellers responded by stating that he had associated with the named persons and that he had used methamphetamine. At no time during this conversation did the police advise Fellers of his Miranda rights.

The officers then escorted Fellers to jail, where they advised him of his Miranda rights. Fellers signed a written Miranda waiver form and agreed to speak with the officers. During this conversation, Fellers reiterated the inculpatory statements made at his home and admitted his association with several more co-conspirators.

Fellers moved to suppress both the inculpatory statements made at his home and those made at the jail. A magistrate judge found that both sets of statements should be suppressed because Fellers was in custody at the time he made the statements at his home, the officers used deceptive stratagems to prompt those statements, and the subsequent statements at the jail would not have been made but for the prior ill-gotten statements. The district court agreed that the statements made at Fellers's home should be suppressed, but admitted the statements made at the jail after finding that Fellers had knowingly and voluntarily waived his Miranda rights before making those statements.

The jury found that Fellers had conspired to distribute and to possess with intent to distribute between 50 and 500 grams of methamphetamine. At sentencing,

the district court held Fellers responsible for more than 500 grams of methamphetamine and denied Fellers's request for a mitigating role adjustment, as well as his motion for a downward departure. After finding that category II did not adequately reflect the seriousness of Fellers's past criminal conduct, the district court raised Fellers's criminal history category to III and sentenced him to 151 months' imprisonment.

## II.

Fellers argues that the district court should have suppressed his inculpatory statements made at the jail because the primary taint of the improperly elicited statements made at his home was not removed by the recitation of his Miranda rights at the jail.

The voluntariness of a confession is a legal inquiry subject to plenary appellate review. United States v. Robinson, 20 F.3d 320, 322 (8th Cir. 1994). To determine if Fellers's inculpatory statements at the jail were voluntary, we must determine if, "in light of the totality of the circumstances, the pressures exerted by the authorities overwhelmed the defendant's will. Coercive police activity is a necessary predicate to finding that a confession is not voluntary in the constitutional sense." Id. (citing Colorado v. Connelly, 479 U.S. 157, 167 (1986)) (internal citation omitted).

Contrary to Fellers's contention otherwise, we conclude that Oregon v. Elstad, 470 U.S. 298 (1985), renders admissible the statements made by Fellers at the jail. In that case, two officers went to Elstad's residence with a warrant to arrest him for the burglary of a neighbor's home. One of the officers told Elstad that he believed that Elstad had been involved in the burglary, whereupon Elstad responded "Yes, I was there." The officers then transported Elstad to the sheriff's office, where, approximately one hour later, they advised Elstad of his Miranda rights. Elstad indicated that he understood his rights and that he wished to waive them. Elstad then

signed a written statement explaining his role in the burglary. The trial court suppressed Elstad's initial oral statement, but admitted his written confession. Id. at 300-302. In holding that the statement given at the sheriff's office was admissible, the Court stated:

> It [would be] an unwarranted extension of Miranda to hold that simple failure to administer the warnings, unaccompanied by any actual coercion or other circumstances calculated to undermine the suspect's ability to exercise his free will, so taints the investigatory process that a subsequent voluntary and informed waiver is ineffective for some indeterminate period. Though Miranda requires that the unwarned admission must be suppressed, the admissibility of any subsequent statement should turn in these circumstances solely on whether it is knowingly and voluntarily made.

Elstad, 470 U.S. at 309.

Citing Patterson v. Illinois, 487 U.S. 285 (1988), Fellers argues that the officers' failure to administer the Miranda warnings at his home violated his sixth amendment right to counsel inasmuch as the encounter constituted a post-indictment interview. Patterson is not applicable here, however, for the officers did not interrogate Fellers at his home.

Finally, we conclude that the record amply supports the district court's finding that Fellers's jailhouse statements were knowingly and voluntarily made following the administration of the Miranda warning. See Elstad, 470 U.S. at 314-15; Robinson, 20 F.3d at 322. Accordingly, the district court did not err in denying the motion to suppress the statements made at the jail.

## III.

Fellers argues that the district court should not have admitted methamphetamine seized from a co-conspirator. We review under an abuse of discretion standard a district court's rulings on the admissibility of evidence. We find no abuse of discretion here, for the evidence established that the seized drugs were part of the on-going conspiracy for which Fellers was prosecuted. United States v. Maynie, 257 F.3d 908, 915 (8th Cir. 2001).

Fellers next argues that the district court erred in limiting his cross examination of a witness. "Absent a clear abuse of discretion and a showing of prejudice, we will not reverse a district court's ruling limiting cross-examination of a prosecution witness on the basis that it impermissibly infringed [the defendant's] right of confrontation." United States v. Stewart, 122 F.3d 625, 627 (8th Cir. 1997). The record reveals that Fellers was allowed to cross-examine the witness about the issues with which he was concerned, and thus we find no abuse of discretion in the district court's ruling.

Fellers contends that the evidence was insufficient to support the verdict. "When reviewing the sufficiency of the evidence, we view the evidence in the light most favorable to the verdict and give the government the benefit of all reasonable inferences. We will reverse 'only if a reasonable jury must have had a reasonable doubt that the elements of the crime were established.'" United States v. Santana, 150 F.3d 860, 864 (8th Cir. 1998) (quoting United States v. Carlisle, 118 F.3d 1271, 1273 (8th Cir. 1997)) (internal quotations and citations omitted). Fellers's argument rests almost entirely on his assertion that the testimony of his co-conspirators was not credible and should have been disregarded. "Assessing the credibility of witnesses is a matter properly left to the jury." Santana, 150 F.3d at 864 (citing United States v. Anderson, 78 F.3d 420, 422-23 (8th Cir. 1996)). The jury heard testimony from multiple witnesses that they bought from and sold to Fellers methamphetamine,

including testimony that the quantities sold to Fellers were sufficient for redistribution to others. This testimony was sufficient to support Fellers's conviction.

Fellers contends that the court erred in denying his motion for a new trial based upon newly discovered evidence.

> We review under an abuse of discretion standard the denial of a motion for a new trial. A defendant is entitled to a new trial based on newly discovered evidence only if he can show (1) that the evidence was not discovered until after the trial; (2) that due diligence would not have revealed the evidence; (3) that the evidence is not merely cumulative or impeaching; (4) that the evidence is material; and (5) that the evidence is such as to be likely to lead to acquittal.

United States v. Zuazo, 243 F.3d 428, 431 (8th Cir. 2001) (citing Lindhorst v. United States, 658 F.2d 598, 602 (8th Cir. 1981)). Because the new evidence Fellers points to is merely impeachment evidence, the district court did not abuse its discretion in denying the motion.

## IV.

Fellers's remaining arguments concern alleged errors committed in calculating his sentence under the Sentencing Guidelines.

Fellers argues that the district court erred in calculating the amount of drugs for which he was responsible. "We review a district court's drug quantity calculations for clear error, and we will reverse only if our examination of the entire record 'definitely and firmly convinces us that a mistake has been made.'" Santana, 150 F.3d at 864 (quoting United States v. Moss, 138 F.3d 742, 745 (8th Cir. 1998)). The jury found that Fellers was responsible for at least 50 but less than 500 grams of methamphetamine. The district court determined that the quantity of

methamphetamine that was reasonably foreseeable to Fellers during the course of the conspiracy was more than 500 grams but less than 1.5 kilograms, a finding that we conclude is not clearly erroneous. Fellers argues that even though his sentence does not exceed the statutory maximum allowable under the jury's verdict, the sentence should be reversed because it is based upon a finding of drug quantity that exceeds that found by the jury. Fellers acknowledges that Apprendi v. New Jersey, 530 U.S. 466 (2000), does not require such a result, and we decline to extend Apprendi to encompass Fellers's situation. As we held in United States v. Hollingsworth, 257 F.3d 871, 878 (8th Cir. 2001), it is "proper for the sentencing judge to then make more exact calculations for purposes of computing the offense level under the guidelines and determining where the sentence will actually fall within the statutory range determined by the jury's verdict."

Fellers contends that the district court erred in finding that his criminal history category did not adequately reflect the seriousness of his past criminal conduct. We review the district court's departure from the Sentencing Guidelines for an abuse of discretion. United States v. Payne, 940 F.2d 286, 293 (8th Cir. 1991). The court may depart upward if "reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes." U.S.S.G. § 4A1.3. Without recounting the details of Fellers's past criminal conduct, we conclude that the district court did not abuse its discretion in determining that an upward departure was warranted.

Fellers challenges district court's denial of his motion for downward departure. So long as a district court is aware of its authority to depart downward, as it clearly was in this case, its refusal to exercise its discretion to depart from the applicable guideline range is unreviewable, United States v. Evidente, 894 F.2d 1000, 1004-05 (8th Cir. 1990), and thus Fellers's challenge fails.

Finally, Fellers argues that the district court erred in denying him a two-level reduction as a minor participant. "[W]hether a defendant qualifies for a minor participant reduction is a question of fact, the determination of which we review for clear error." United States v. Alvarez, 235 F.3d 1086, 1090 (8th Cir. 2000) (quoting United States v. Hale, 1 F.3d 691, 694 (8th Cir. 1993)). Fellers argues that he was less culpable than other participants because the majority of the evidence showed him as receiving the drugs, not distributing them. There was sufficient evidence indicating that Fellers had a larger role in the conspiracy than being a mere user, however, and thus the district court did not err in finding that Fellers was not a minor participant in the conspiracy.

The judgment is affirmed.

RILEY, Circuit Judge, concurring.

In all respects but one, I concur in the Court's well-reasoned opinion. My disagreement, which does not affect the ultimate resolution of this case, concerns whether the arresting officers violated Fellers's right to counsel under the Sixth Amendment.

Because Fellers was under indictment at the time of his arrest, he had a constitutional right to the presence of counsel during police interrogation. Massiah v. United States, 377 U.S. 201, 205-06 (1964). For purposes of this right, an interrogation takes place when agents of law enforcement deliberately attempt to elicit incriminating information from the indicted defendant. See id. at 206. Although the officers in this case did not ask Fellers any questions, they deliberately elicited incriminating information by telling Fellers they wanted to discuss his involvement in the use and distribution of methamphetamine. This post-indictment conduct outside the presence of counsel violated Fellers's right to counsel under the Sixth Amendment. See United States v. Henry, 447 U.S. 264, 270-71 (1980); Brewer

v. Williams, 430 U.S. 387, 399-401 (1977); cf. Rhode Island v. Innis, 446 U.S. 291, 300-02 & 300 n.4 (1980).

Nevertheless, I do not believe this constitutional violation takes Fellers's case outside the rationale of Oregon v. Elstad, 470 U.S. 298 (1985). The Supreme Court "has never held that the psychological impact of voluntary disclosure of a guilty secret . . . compromises the voluntariness of a subsequent informed waiver." Id. at 312. Fellers knowingly and voluntarily waived his Sixth Amendment rights at the jail, and his subsequent statements were thus admissible at his criminal trial. Accordingly, I concur in the judgment of the Court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.